UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 05-2681(DSD/SRN)


Brenda Weis,

            Plaintiff,

v.                                                    **ORDER**

Honeywell International, Inc.,

            Defendant.


>   Thomas E. Glennon, Esq., Glennon Law Office, 90 South
>   Seventh Street, Suite 4700, Minneapolis, MN 55042,
>   counsel for plaintiff.
>
>   Kathryn H. Carlson, Esq. and Miller & Carlson, 111 Third
>   Avenue South, Suite 240, Minneapolis, MN 55402 and
>   Michael H. Cramer, Esq., Michael D. Ray, Esq. and
>   Ogletree, Deakins, Nash, Smoak & Stewart, 20 South Clark
>   Street, 25th Floor, Chicago, IL 60603, counsel for
>   defendant.


This matter is before the court upon defendant's motion for
summary judgment. Based upon a review of the file, record and
proceedings herein, and for the reasons stated, the court grants
defendant's motion.


## BACKGROUND

Plaintiff Brenda L. Weis ("Weis") commenced this action
against defendant Honeywell International, Inc., ("Honeywell")
alleging that she was discriminated against based on her age in
violation of the Minnesota Human Rights Act ("MHRA"). Weis also

asserts a claim for defamation under Minnesota law.  For twenty-six years, Weis worked at Honeywell in a variety of positions.  Her employment was terminated on February 23, 2005, following an investigative report that concluded Weis and a co-worker misused the company's online employee reward and recognition program.

Honeywell hired Weis on February 12, 1979.  At the time of her termination, Weis was a traffic administrator at the Honeywell facility located in Coon Rapids, Minnesota.  Weis worked in an office with two other traffic administrators, Rachel St. Catherine ("St. Catherine") and Debbie Leslie.  As a traffic administrator, Weis would organize products and commercial licenses prior to products being shipped to customers.  During the time period relevant to this litigation, Gary Liddle ("Liddle") was Weis's supervisor, Sara Vandeventer ("Vandeventer") was the Human Resources Manager of the Honeywell Coon Rapids facility, Jill Moody ("Moody") was Vandeventer's supervisor, Lisa Bickel ("Bickel") was Honeywell's Chief General Human Resources Counsel of Honeywell's aerospace division and Brian Marcotte ("Marcotte") was the plan administrator of the Honeywell severance plan.

In 2003, Honeywell implemented a companywide online employee recognition program known as the Bravo program.  The Bravo program was designed to enable ad hoc reward and recognition of Honeywell employees and consisted of various monetary and non-monetary awards that could be given by employees and supervisors, including the

2

Peer Star award and the Bronze award. The Peer Star award allowed non-manager employees to give co-employees a $25 payroll award to say thank you or to recognize a job well done. An employee could give two Peer Star awards each year without receiving prior approval by a supervisor or manager. Supervisors were not automatically informed when employees gave each other Peer Star awards. The Bronze award can also be given by co-workers and ranged from $25 to $200, but requires a manager's approval.

Honeywell has a Code of Business Conduct that requires its employees to avoid conflicts of interest and safeguard company property. (See Glennon Aff. Ex. 11.) The Code of Business Conduct informs employees they can be disciplined and even terminated for failure to comply with the code or engaging in any unethical or improper conduct not specified in the code.

On February 17, 2005, Liddle simultaneously received two e-mail alerts that Weis and St. Catherine nominated each other for Bronze awards in the amount of $200. Liddle was instantly concerned with the propriety of the nominations and questioned Weis and St. Catherine the following day. Liddle was surprised that Weis and St. Catherine agreed to award such sizable recognition without first informing him. When questioned about the awards, both employees responded that the other deserved an award because she had saved Honeywell money on freight bills by ensuring accurate billing. Liddle informed Weis and St. Catherine that saving money

3

on freight bills and correcting inaccurate charges was an expectation of their jobs. Liddle was primarily upset that it appeared the two women agreed to give each other the awards. Following the conversation, Liddle concluded that Weis and St. Catherine collaborated to misuse the Bravo system based on the simultaneous nature of the requests, the lack of any substantial reasoning behind their requests, the size of the awards and the failure of either employee to inform Liddle in advance.

Liddle promptly notified Vandeventer of the situation. Honeywell takes misuse of the Bravo system seriously. Vandeventer gathered data from the Bravo system and discovered that on three prior occasions Weis and St. Catherine simultaneously gave each other $25 Peer Star awards on the same day, at the exact same time and for nearly identical reasons. On February 18, 2005, Vandeventer met individually with Weis and St. Catherine and informed each employee that Honeywell was starting an investigation into their use of the Bravo system. According to Vandeventer, St. Catherine acknowledged that the awards could seem suspicious and stated that she and Weis agreed to give each other the awards based on what they believed to be cost savings to the company. Weis told Vandeventer that she had done nothing wrong, St. Catherine was deserving of the awards received and Weis did not understand how they could be in trouble. After speaking with Weis and St. Catherine, Vandeventer concluded they had misused the Bravo system.

4

Vandeventer completed an initial investigation report that summarized her findings and conclusions and recommended discipline short of termination. Vandeventer spoke with Moody and Bickel about the situation on February 21, 2005. Bickel informed Vandeventer that in 2004 Honeywell terminated seven employees in Phoenix, Arizona, for their misuse of the Bravo system. The Arizona employees agreed to grant each other Bravo awards. Based on the information Vandeventer conveyed to Bickel, Bickel could not distinguish the reported misuse by Weis and St. Catherine from the misuse that resulted in the Arizona terminations. As general counsel for Honeywell, one of Bickel's goals is to be consistent in employment decisions throughout the company's respective divisions. Honeywell has all nonunion terminations reviewed in the company's legal department.

In recommending to Vandeventer that Weis and St. Catherine be terminated, Bickel specifically considered the fact that the three prior Bravo awards were granted at the exact same time for effectively the same reasons. In addition to being consistent with the manner in which the Arizona employees were disciplined, Bickel thought that the four reciprocal awards were a conflict of interest and violated the Code of Business Conduct. According to Bickel, at a minimum, there was an appearance of impropriety because Weis and St. Catherine were entrusted with company funds and exercised exceedingly poor judgment in awarding each other identical awards

for identical reasons on numerous occasions. Following her conversation with Bickel, Vandeventer changed the recommended disciplinary action to termination and completed a final investigative report, which she forwarded to Bickel the evening of February 21. (<u>See</u> Glennon Aff. Ex. 3.)

On February 22, at 8:33 a.m., Bickel forwarded the investigative report to Marcotte, who had to approve any termination "for cause." (Glennon Aff. Ex. 4.) In forwarding the report and proposed termination letters, Bickel informed Marcotte of the following:

> Another Bravo abuse case. Two employees gave each other awards on the same day for virtually identical reasons on four occasions. Boss caught it on the fourth attempt because they tried to give Bronze awards v. the peer awards. Bronze awards required his approval. Employees clearly went into the tool together with the intent to reward each other.
>
> In prior similar case we terminated for cause. We can't identify any reason to treat this one differently. We do think we need to send out an affirmative message that this type of activity is not appropriate.

More details attached if you want them.

(<u>Id.</u>)

At 8:39 a.m., Vandeventer provided Bickel with the following information: the names of Weis and St. Catherine, their race, their age and their service date. According to Bickel, as general counsel for Honeywell she routinely reviews demographic information in assessing risks involved with employment decisions. Marcotte

6

approved the terminations as for cause.  At 9:00 a.m., Bickel e-mailed Vandeventer the following: "Brian Marcotte concurs.  Proceed with for cause terms."  (Id.)

On February 23, Liddle and Vandeventer met with Weis and St. Catherine to inform them that their employment with Honeywell was being terminated for cause as a result of the company's conclusion following the investigation that their misuse of the Bravo system violated the Honeywell Code of Business Conduct.  According to Weis, she had not been previously disciplined and received numerous awards and commendations throughout her twenty-six years with the company.  Because Weis was terminated for cause for violating the Code of Business Conduct, she was not entitled to severance benefits.  Following her termination, Weis began to look for a new job.  Honeywell gave Weis a letter that stated she was terminated for cause because she had violated the Code of Business Conduct. In looking for new employment, Weis avoided potential employers that would require her to disclose that she was terminated for cause.  When asked why she left Honeywell, she would tell people there had been a downturn in the airline industry.

At the time Weis and St. Catherine were contemporaneously terminated, Weis was forty-five years old and St. Catherine was thirty years old.  Although Weis had been employed at Honeywell for over twenty-six years, St. Catherine had only been employed since 2003.  Following their termination, neither of the women's

positions was eliminated.  Honeywell hired a forty-seven year old male who had been employed with Honeywell since 1977 and a fifty-nine year old female who had been employed with Honeywell since 1987 to replace Weis and St. Catherine.  (Bickel Aff. ¶¶ 5-6.)

On August 21, 2003, Weis commenced this action against Honeywell alleging that in connection with her termination Honeywell's management and supervisory personnel "made false statements about Weis which were communicated to third parties which tended to disgrace and degrade Weis and to hold her up to public ridicule and contempt."  (Compl. ¶¶ 9-13.)  Weis also alleges that she was required to self-publish defamatory statements.  In addition to defaming her, Weis contends that Honeywell terminated her employment based on her age and interfered with her ability to acquire pension benefits in violation of the MHRA.  <u>See</u> Minn. Stat. § 363A.08, subds. 2, 5.  Honeywell moves for summary judgment on all claims.

**DISCUSSION**

**I.   Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. Id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in the light most favorable to the non-moving party. Id. at 255. The non-moving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. If a plaintiff cannot support each essential element of a claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

## II.  ERISA Preemption

In the complaint, Weis alleges that Honeywell's unlawful termination of her employment based on her age interfered with her opportunity to acquire pension credits and benefits. (Compl. ¶ 18.) Under the MHRA, an age discrimination claim includes acts "which interfere with an employee's opportunity to acquire pension credits or pension benefits when the interference cannot be shown to have been based on just cause unrelated to the employee's status with regard to pension credits or pension benefits." Minn. Stat.

9

§ 363A.08, subd. 7.  The Employee Retirement Income Security Act of 1974 ("ERISA") also broadly prohibits employers from interfering with the attainment of benefits under an employee benefit plan.  29 U.S.C. § 1140.  Honeywell argues that to the extent Weis asserts a claim for unlawful interference with plan benefits, that claim is preempted by ERISA.  See Alwin v. Spring Comms. Co., 870 F. Supp. 275, 277 (D. Minn. 1994); 29 U.S.C. § 1144(a).

In Alwin, the court acknowledged that although ERISA does not completely preempt the MHRA, "when a plaintiff contends that the motivating factor behind her termination was the employer's attempt to avoid benefit payments, preemption is clear."  870 F. Supp. at 277 (citing Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990)).   Under ERISA, to establish a prima facie case of interference with the attainment of plan benefits, a plaintiff must show that entitlement to protected benefits motivated the employer's decision.  See Koons v. Aventis Pharms., Inc., 367 F.3d 768, 778 (8th Cir. 2004); Regel v. K-Mart Corp., 190 F.3d 876, 880 (8th Cir. 1999).  Further, to rebut an employer's legitimate, nondiscriminatory reason for the employment decision, a plaintiff must present evidence that the employer "acted with 'specific intent' to interfere with their rights" under the plan, and evidence of such intent must be more specific than "mere conjecture."  Jefferson v. Vickers, Inc., 102 F.3d 960, 964 (8th Cir. 1996).

In her responsive memorandum, Weis did not address Honeywell's argument that her claim of intentional interference with pension benefits based on her age is preempted by ERISA, nor did she argue the merits of an intentional interference claim under the MHRA or ERISA. The court concludes she has abandoned any such claim. Further, regardless of preemption, there is no evidence that Honeywell intended to interfere with Weis's pension benefits based on her age. For these reasons, to the extent Weis pleaded an intentional interference claim apart from an age discrimination claim, that claim fails.

## III. Age Discrimination under the MHRA

Under the MHRA, it is an unlawful employment practice to discharge an employee based on his or her age. Minn. Stat. § 363A.08, subd. 2(b-c). The court examines plaintiff's MHRA claim in the same manner as age discrimination claims under the Age Discrimination in Employment Act, utilizing the burden-shifting analysis set forth in McDonnell Douglas v. Green, 411 U.S. 792 (1973). See Chambers v. Metro. Prop. & Cas. Ins. Co., 351 F.3d 848, 855 (8th Cir. 2003). First, plaintiff must establish a prima facie case of age discrimination. Id. If plaintiff succeeds, the burden of production shifts to defendant to articulate a legitimate, nondiscriminatory reason for its conduct. Id. at 856; Mayer v. Nextel W. Corp., 318 F.3d 803, 807 (8th Cir. 2003). If defendant offers such a reason, plaintiff must then demonstrate

that the proffered reason is pretext for unlawful discrimination. <u>Chambers</u>, 351 F.3d at 855.

### A.   Plaintiff's Prima Facie Case

To establish a prima facie case of age discrimination, plaintiff must show that (1) she was a member of a protected age group, (2) she was performing her job at a level that met her employer's legitimate expectations, (3) she was terminated and (4) age was a factor in the employment decision. <u>Erickson v. Farmland Indus., Inc.,</u> 271 F.3d 718, 725-26 (8th Cir. 2001). A plaintiff can establish the fourth element by proving that he or she was replaced by someone substantially younger or similarly situated employees outside of the protected class were treated more favorably. <u>Thomas v. Corwin</u>, No. 06-1496, — F.3d — , 2007 WL 967315, at *7 (8th Cir. Apr. 3, 2007); <u>Lewis v. St. Cloud State Univ.,</u> 467 F.3d 1133, 1136 (8th Cir. 2006). However, "employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgment made by employers, except to the extent that those judgments involve intentional discrimination." <u>Regel v. K-Mart Corp.,</u> 190 F.3d 876, 880 (8th Cir. 1999) (internal quotations omitted).

Honeywell argues that Weis is unable to establish a prima facie case of age discrimination because she did not comport with company expectations when she misused the Bravo system and she

12

cannot establish that age was a factor in Honeywell's decision to terminate her employment. The court agrees. In opposing Honeywell's motion for summary judgment, the substance of Weis's repeated arguments and supporting materials challenges the severity and fairness of her discipline in light of her twenty-six years with the company. According to Weis, she did nothing wrong in rewarding St. Catherine the Bravo awards, and her employment record was remarkable.

However, the fact that Weis was terminated for the exact same reason and at the exact same time as a substantially younger Honeywell employee is fatal to her age discrimination claim. Her termination was also consistent with prior terminations of the similarly situated Honeywell employees in Arizona who had been investigated for misusing the Bravo system. Weis's position with the company was not eliminated, and she was replaced with an older Honeywell employee with more years of experience. As to the company's legitimate expectations, Honeywell does not dispute Weis's job performance prior to 2005. Weis failed to meet the company's expectations when the company concluded that she had misused the Bravo system. Therefore, she has failed to establish a prima facie case of age discrimination.

### B.   Defendant's Legitimate, Nondiscriminatory Reason

Assuming that Weis could establish a prima facie case of age discrimination, Honeywell has nonetheless met its burden to

articulate a legitimate, nondiscriminatory reason for plaintiff's termination. See Chambers, 351 F.3d at 856. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)). Citing misuse of the Bravo rewards system, Honeywell asserts that it terminated Weis for her violation of the company's Code of Business Conduct. Violation of company policy is a legitimate, nondiscriminatory reason for adverse employment action.

### C. Evidence of Pretext

Under the McDonnell Douglas burden-shifting analysis, the burden would then shift back to plaintiff to "offer proof that would allow a rational fact-finder to conclude that the proffered reason was not the true reason for the employment action, and that age was." Yates v. Rexton, Inc., 267 F.3d 793, 800 (8th Cir. 2001) (citing St. Mary's Honor Ctr., 509 U.S. at 507-08). To be successful, a plaintiff "must present sufficient evidence to (1) create a question of fact as to whether [defendant's] proffered reason was pretextual *and* (2) create a reasonable inference that age was a determinative factor in the decision to demote [her]." Erickson, 271 F.3d at 726 (emphasis in original). To establish pretext, a plaintiff can present evidence that (1) the proffered explanation had no basis in fact, (2) it was not the employer's

14

policy or practice to respond to such problems in the way it responded in plaintiff's case and (3) a discriminatory attitude existed in the workplace. <u>Id.</u> at 727. However, once an employer articulates a lawful reason for its decision, it is not the province of the court to decide whether the decision was "wise, fair or even correct," so long as it was not pretext for illegal discrimination. <u>Wilking v. County of Ramsey</u>, 153 F.3d 869, 873 (8th Cir. 1998) (internal quotations omitted).

Weis argues that the timing of Bickel's e-mail to Vandeventer with the go-ahead to terminate Weis twenty-one minutes after Bickel was informed of Weis's age is circumstantial evidence of age discrimination and pretext. Additionally, in an e-mail dated March 18, 2005 — responding to a follow-up of Bickel's explanation that Weis and St. Catherine were terminated for cause following a full investigation into whether they misused the Bravo system — Bickel referred to St. Catherine as the "other woman (shorter service younger)." (Glennon Aff. Ex. 7.) Weis challenges the veracity of the contents of Vandeventer's internal memorandum and the thoroughness of the company's investigation. Weis emphasizes that Vandeventer did not originally recommend termination and that Liddle was surprised at the severity of the discipline and thought such action was heavy-handed for the misconduct.

As an initial matter, whether Weis in fact violated company policy or in fact misused the Bravo system need not be resolved

because her age discrimination claims fails even if Honeywell honestly believed that she did and terminated her for that reason. See Koons, 367 F.3d at 778 n.6.  Although Weiss challenges the prudence of the company's decision to terminate her and the failure of Bickel to take into account her twenty-six-year employment record, she has not created a reasonable inference that the employment decision was based on anything other than Honeywell's conclusion that she and St. Catherine misused the Bravo system.

Bickel testified that as general counsel for Honeywell she routinely receives and reviews demographic information when overseeing employment decisions.  Further, Bickel's recommendation to terminate Weis was formulated and forwarded to Marcotte prior to her receipt of Weis's age.  Bickel did not inform Marcotte of Weis's age, and Marcotte gave the ultimate approval of the termination.  Lastly, the internal disagreement regarding the severity of the discipline for the Bravo misuse is not evidence that Weis was terminated based on her age.  To the contrary, it indicates that Honeywell terminated her for abusing the Bravo system and that the individuals involved with that decision disagreed on the appropriate discipline. Honeywell's justification has a solid, if not uncontradicted, factual basis and was consistent with the manner in which the company handled the similar

16

misconduct in Arizona.  Plaintiff has not met her burden to show that defendant's proffered reason to terminate her was a pretext for unlawful age discrimination.

For all the above reasons, summary judgment in favor of Honeywell on Weis's MHRA age discrimination claim is warranted.

## IV.  Defamation Claim

To succeed on a defamation claim under Minnesota law, a plaintiff must establish that a false statement was communicated to someone other than the plaintiff and harmed the plaintiff's reputation or lowered her in the "estimation of the community." Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 256 (Minn. 1980). Under certain circumstances, a plaintiff can establish the publication requirement if "compelled to publish a defamatory statement to a third person" and "it was foreseeable to the defendant that the plaintiff would be so compelled." Lewis v. Equitable Life Assurance Soc'y, 389 N.W.2d 876, 888 (Minn. 1986). Although recognized in the context of interviews with prospective employers, the doctrine of self-publication is to be "cautiously applied." Id.

A statement can be conditionally privileged if "made upon a proper occasion, from a proper motive, and ... based upon reasonable or probable cause." Stuempges, 297 N.W.2d at 256-57. In the employment context, "[c]ommunications between an employer's agents made in the course of investigating or punishing employee

17

misconduct are made upon a proper occasion and for a proper purpose." Ferrell v. Cross, 557 N.W.2d 560, 566 (Minn. 1997) (internal quotations omitted). To establish a qualified privilege, a defendant must show the statement was made "in good faith by a speaker who had an interest or duty with respect to the subject matter to a person having a corresponding interest or duty." Id. at 565. If a defendant can establish the existence of a conditional privilege, a plaintiff then has the burden to prove the privilege was abused, which requires a showing of actual malice. Stuempges, 297 N.W.2d at 257. To establish malice, a plaintiff must demonstrate the defendant "made the statement from ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff." Id. (internal quotations omitted).

Plaintiff's defamation claim fails because she has not identified any defamatory statements that were communicated to third parties — self published or otherwise — that form the basis of her claim. Rather, she ambiguously refers to Honeywell determining that she misused the Bravo system and violated the Code of Business Conduct and terminating her employment. To the extent she references the investigation in which Liddle, Vandeventer and Bickel participated, any statements made during the process of Honeywell's investigation were made upon proper occasion for a proper purpose and are privileged. Because Weis has not identified any defamatory statements published by herself or Honeywell to

18

third parties, and any statements made during the course of the investigation would be privileged, summary judgment in favor of Honeywell is warranted on plaintiff's defamation claim.

CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Docket No. 11] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  April 5, 2007

s/David S. Doty       <br>David S. Doty, Judge<br>United States District Court

19